1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANTHONY STARKES,

11          Plaintiff,                 No. CIV S-05-2275 RRB GGH P

12      vs.

13   DR. HAILE, et al.,

14          Defendants.               FINDINGS & RECOMMENDATIONS

15   _____/

16   I.  Introduction

17          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

18   42 U.S.C. § 1983.  Plaintiff alleges that he received constitutionally inadequate medical care

19   from defendants Dr. Haile, Dr. Kofoed and Nurse Francisco for his broken ankle while he was

20   housed at the California Medical Facility (CMF).

21          Pending before the court is defendants' summary judgment motion filed

22   November 9, 2007.  On December 7, 2007, plaintiff filed his opposition.

23          After carefully considering the record, the court recommends that defendants'

24   motion be granted.

25   /////

26   /////

II. <u>Summary Judgment Standards Under Rule 56</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>See id.</u> at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its

1   contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

2   106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

3   material, i.e., a fact that might affect the outcome of the suit under the governing law, see

4   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

5   Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

6   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

7   nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

8          In the endeavor to establish the existence of a factual dispute, the opposing party

9   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

10  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

11  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

12  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

13  genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

14  56(e) advisory committee's note on 1963 amendments).

15         In resolving the summary judgment motion, the court examines the pleadings,

16  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

17  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

18  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

19  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

20  at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

21  obligation to produce a factual predicate from which the inference may be drawn.  See Richards

22  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

23  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

24  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

25  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

26  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

1        On January 11, 2006, the court advised plaintiff of the requirements for opposing

2   a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

3   F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.

4   1988).

5   III.  Undisputed Facts

6        On October 6, 2004, plaintiff injured his ankle.  On that day, plaintiff went to the

7   B-1 Clinic where defendant Haile examined him.  Plaintiff complained of swelling and pain of

8   his left ankle.  Plaintiff was limping when he arrived at the Clinic.  Defendant Haile diagnosed

9   the injury as a sprain and ordered 1)Tylenol, 650 milligrams orally 3times a day as needed for 10

10  days; 2) an ice pack; 3) an ace bandage; 4) crutches for 7 days; 5) a lay-in for 5 days; and 6) rest

11  and to elevate the leg.

12       On October 14, 2004, Dr. Liou, plaintiff's primary care physician, examined

13  plaintiff's ankle and found it swollen and tender.  Dr. Liou ordered an x-ray of plaintiff's ankle.

14       Plaintiff's ankle was x-rayed on October 14, 2004.  The results of the x-ray

15  showed that plaintiff had a nondisplaced transverse fracture of the lateral malleolus.  After

16  reviewing the x-ray results, Dr. Liou ordered 1) a lay-in for 21 days; 2) methadone as needed for

17  pain; 3) crutches for 3 weeks; and 4) return to the clinic for follow-up in 1 week.  Dr. Liou also

18  filled out a request that plaintiff be seen for a consultation in the Ortho Clinic by defendant

19  Kofoed because "x-ray showed fracture of fibula distal end left foot."  Dr. Bick authorized the

20  referral.

21       On October 14, 2004, after reviewing the x-ray, Dr. Liou also sent plaintiff to the

22  emergency room for an immobilizer.  In the emergency room, Dr. Dhillon and defendant Haile

23  saw plaintiff.  They applied a temporary posterial splint to plaintiff's left leg.

24       On November 1, 2004, defendant Kofoed saw plaintiff in the Ortho Clinic.

25  Defendant Kofoed applied a short-leg walking cast to plaintiff's left ankle.  Defendant Kofoed

26  ordered a follow-up with the Ortho Clinic in 4 weeks and an x-ray for November 15, 2004.

4

On November 10, 2004, plaintiff's left ankle was x-rayed.  The results revealed an anatomic alignment of healing fracture, which meant that no surgical intervention was required. The x-ray also revealed that the fracture was not completely healed, but the medial and posterial malleolus appeared to be inact.

On November 30, 2004, defendant Kofoed removed the walking cast, recommended a walking program, ordered x-rays and a follow-up in the Ortho Clinic in 4 weeks.

On December 6, 2004, plaintiff's left ankle was x-rayed per defendant Kofoed's order.  The results revealed an incomplete healing of the distal fibular fracture.  It was noted that the fracture line was still well delineated, meaning that the line had not changed in position to reflect instability.  The results also showed that the union appeared to be incomplete at the time. It was also noted that the medical malleolus was intact and no definite posterior malleolar fracture was seen.

On January 31, 2005, defendant Kofoed examined plaintiff at the Ortho Clinic, where he complained of stiffness and pain in his ankle.  Defendant Kofoed observed that plaintiff's gait was normal when walking short distances and that healing was noted on the last x-ray done in December 2004.  Defendant prescribed a physical therapy program for the left ankle and Motrin.

Defendant Kofoed next saw plaintiff in the Ortho Clinic on December 5, 2005, at which time plaintiff complained of ankle pain.  At that time, plaintiff was in physical therapy for his ankle.  Defendant noted that there was tenderness over the lateral ankle, even though the November 17, 2005, x-ray revealed that the bone was healed with okay alignment.  The radiology report from the x-ray revealed no osseous abnormality and no fracture.  Defendant Kofoed dictated a chrono for plaintiff for an ankle sleeve and tennis shoes to be effective through December 4, 2006.

/////

/////

IV.  Legal Standard for Eighth Amendment Claim

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Indications that a prisoner has a serious need for medical treatment are the following:  the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.  However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.  Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

/////

6

1        It is nothing less than recklessness in the criminal sense – subjective standard –

2  disregard of a risk of harm of which the actor is actually aware.  Id. at 838-842, 114 S. Ct. at

3  1979-1981.  "[T]he official must both be aware of facts from which the inference could be drawn

4  that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837,

5  114 S. Ct. at 1979.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk

6  of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at

7  847, 114 S. Ct. at 1984.  "[I]t is enough that the official acted or failed to act despite his

8  knowledge of a substantial risk of serious harm."  Id. at 842, 114 S. Ct. at 1981.  If the risk was

9  obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42, 114 S. Ct. at

10  1981.  However, obviousness per se will not impart knowledge as a matter of law.

11        Also significant to the analysis is the well established principle that mere

12  differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

13  Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,

14  662 F.2d 1337, 1344 (9th Cir. 1981).

15        Moreover, a physician need not fail to treat an inmate altogether in order to violate

16  that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

17  1989).  A failure to competently treat a serious medical condition, even if some treatment is

18  prescribed, may constitute deliberate indifference in a particular case.  Id.

19        Additionally, mere delay in medical treatment without more is insufficient to state

20  a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766

21  F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is

22  no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing

23  Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-

24  1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends

25  to provide additional support for a claim of deliberate indifference; however, it does not end the

26  inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

1    medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

2    needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

3    the defendant."  McGuckin, 974 F.2d at 1061.

4                 Superimposed on these Eighth Amendment standards is the fact that in cases

5    involving complex medical issues where plaintiff contests the type of treatment he received,

6    expert opinion will almost always be necessary to establish the necessary level of deliberate

7    indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus, although there

8    may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the

9    treatment he received equated with deliberate indifference thereby creating a material issue of

10   fact, summary judgment should be entered for defendants.  The dispositive question on this

11   summary judgment motion is ultimately not what was the most appropriate course of treatment

12   for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence,

13   criminally reckless.

14   V.  Discussion

15               A.  Defendant Haile

16                 Plaintiff alleges that defendant Haile's failure to properly diagnose his ankle

17   injury on October 6, 2004, violated his Eighth Amendment right to adequate medical care.

18   Plaintiff contends that defendant's failure to properly diagnose his injury caused him to suffer

19   great pain and caused further injury to his ankle, which was not properly diagnosed until 8 days

20   later on October 14, 2004.

21                 Defendants argue that defendant Haile did not act with deliberate indifference to

22   plaintiff's serious medical needs when she treated plaintiff's injury as a sprain on October 6,

23   2004.  In her declaration filed in support of the motion, defendant Haile states that based on the

24   mechanism of plaintiff's injury and her physical examination of plaintiff, she diagnosed him as

25   suffering from a sprain.  Haile declaration, ¶ 7.  Defendant Haile states that when plaintiff

26   continued to experience pain, Dr. Liou ordered an x-ray.  Id., ¶ 14.

1         In his declaration, defendant Kofoed offers the following explanation for

2   defendant Haile's failure to properly diagnose plaintiff's injury:

3   > It is my medical opinion that the initial treating physicians acted appropriately by
> splinting Starke's ankle at the time of the injury and referring him for orthopedic

4   > consultation.  If there was a delay, it may have just been a few days and the fact
> that Starkes had no displacement at the time of my evaluation would suggest that

5   > no harm was done by a few days of delay in terms of diagnosis.  It is not unusual
> for a simple nondisplaced fracture to be confused with a soft tissue sprain and

6   > often these injuries are treated with crutches, nonweightbearing, and evaluation
> until x-rays can be obtained to clarify the diagnosis.

7

8   Kofoed declaration, ¶ 18.

9         Defendant Kofoed's discussion in his declaration of defendant Haile's treatment

10  of plaintiff on October 6, 2004, is not entirely clear.  He appears to believe that defendant Haile

11  misdiagnosed plaintiff on October 14, 2004, when she put the splint on his ankle.  Defendant

12  Kofoed also states that plaintiff suffered no harm as a result of the delay in diagnosis because

13  when he saw plaintiff on November 1, 2004, there was no displacement.  Apparently plaintiff

14  suffered no harm to his ankle as a result of the delay in diagnosis, whether it occurred on October

15  6, 2004, or October 14, 2004.

16        Plaintiff has offered no expert evidence demonstrating that defendant Haile's

17  failure to properly diagnose his broken ankle on October 6, 2004, caused him to suffer additional

18  injury to his ankle.  Because defendants' evidence that the delay in proper diagnosis did not cause

19  additional ankle injury is unopposed, defendant Haile should be granted summary judgment as to

20  this claim.

21        Plaintiff also suggests that had defendant Haile properly diagnosed the ankle

22  injury on October 6, 2004, she would have prescribed stronger pain medication.  On that day, she

23  prescribed Tylenol, 650 milligrams orally 3 times a day as needed for 10 days.  In contrast, Dr.

24  Liou prescribed methadone, as needed.

25        Had defendant Haile ordered an x-ray of plaintiff's ankle on October 6, 2004, then

26  the injury would have been properly diagnosed and he likely would have been prescribed

1   stronger pain medication.  Defendant Haile's declaration does not adequately explain why she

2   did not order an x-ray, while Dr. Liou determined that an x-ray was warranted.  While defendant

3   Haile suggests that plaintiff's continued pain prompted Dr. Liou to order an x-ray, the court

4   cannot make this inference as it is not a medical expert.

5           In his declaration, defendant Kofoed does not directly address defendant Haile's

6   failure to order an x-ray.  However, he states that it is not unusual for a simple nondisplaced

7   fracture to be confused with a soft tissue sprain.  Based on this statement, the court finds that

8   defendant Haile's misdiagnosis was, at most, a negligent mistake that did not rise to deliberate

9   indifference.  Plaintiff has offered no expert evidence suggesting otherwise.  Accordingly, the

10  court finds that defendant Haile should be granted summary judgment as to this claim as well.

11                  B.  Defendant Francisco

12          The facts regarding defendant Francisco's treatment of plaintiff are disputed.

13  Plaintiff claims that on October 10, 2004, and October 11, 2004, he requested a triage visit at the

14  medical department due to the extreme swelling and pain in his ankle.  Plaintiff claims that

15  defendant Francisco denied his requests for triage visits.

16          In his declaration submitted in support of the summary judgment motion,

17  defendant Francisco states that he did not work on October 10, 2004.  Francisco declaration, ¶ 7.

18  Defendants have also presented the declaration of Debi Robinson, an Institutional Personnel

19  Officer at the CMF.  Ms. Robinson states that defendant Francisco's employee attendance

20  records indicate that she did not work on October 10, 2004, as it was her regular day off.

21  Robinson declaration, ¶ 4.

22          As to October 11, 2004, in his declaration defendant Francisco states that he has

23  no specific recollection of having a conversation with plaintiff on October 11, 2004.  Francisco

24  declaration, ¶ 9.  Defendant Francisco has no recollection of assisting a physician in providing

25  medical care or treatment to plaintiff.  Id.  Plaintiff's medical records contain no annotations or

26  records that were made by defendant.  Id.

1    In his verified declaration submitted in support of his opposition, plaintiff claims

2 that defendant Francisco denied his requests for triage visits on October 10, 2004, and October

3 11, 2004.  Declaration, p. 3.  Plaintiff states that defendant Francisco was fully aware of

4 plaintiff's injury and denied plaintiff access to a doctor by telling the P-1 Wing officer Aronsen

5 that plaintiff's injury was a non-emergency and that plaintiff needed to fill out a sick-call slip to

6 see his primary doctor.  Id.

7    Whether defendant Francisco saw plaintiff on October 10, 2004, or October 11,

8 2004, is disputed.  Assuming plaintiff's version of facts as true, the court finds that defendant

9 Francisco did not act with deliberate indifference.

10    Defendant Francisco's alleged assessment of plaintiff's injury as a non-emergency

11 did not amount to deliberate indifference.  Plaintiff had been seen by defendant Haile on October

12 6, 2004, and diagnosed with a sprained ankle.  He had been given crutches and an ace bandage.

13 While plaintiff's ankle may still have been painful and swollen, under these circumstances

14 defendant Francisco's alleged assessment that his condition constituted a non-emergency and that

15 plaintiff should request to be seen by his primary doctor was not deliberate indifference.

16 Defendant Francisco obviously did not know that the ankle was actually broken.   For these

17 reasons, the court recommends that defendant Francisco be granted summary judgment.

18    C.  Defendant Kofoed

19    Plaintiff alleges that defendant Kofoed violated his Eighth Amendment right to

20 adequate medical care when he removed plaintiff's cast before the fracture was completely

21 healed.  Plaintiff also argues that defendant Kofoed violated the Eighth Amendment by failing to

22 provide follow-up treatment for over two months and for not ordering timely physical therapy.

23    Defendants argue that defendant Kofoed did not act with deliberate indifference to

24 plaintiff's serious medical needs.  In his declaration defendant Kofoed states, in relevant part,

25    17.  After reviewing Starkes' medical records, it is my medical opinion that
        Starkes had a nondisplaced fracture of the lateral malleolus.  (See 00219.)  It
26      appears there was never any loss of position of the mortise.  (See 000219.)

Starkes was treated for six weeks in a short-leg walking cast which is standard. (See 000141 and 000138). The radiologist noted a persistent fracture line after cast removal which is not uncommon. (See 000216.) It is common practice for physicians to initiate progressive, careful physical therapy and strengthening to re-gain range of motion, strength and flexibility to a lateral malleolar nondisplaced fracture for six to twelve weeks from date of injury. It is not uncommon for people to have pain following an ankle fracture for as long as a full year with gradual improvement. It is also not uncommon for patients to continue to have pain for the rest of their life with increased activity and/or cold damp weather. Starkes' bone went on to heal completely as noted in the radiology report dated November 17, 2005. (See 000214.)

Kofoed declaration, ¶ 17.

While defendant Kofoed does not directly address plaintiff's claim that his cast should not have been removed before the fracture was completely healed, he states that plaintiff's treatment for 6 weeks in a short-leg walking cast was standard. He also states that the radiologist noted a persistent fracture line after the cast removal, which is not uncommon. He also states that plaintiff's bone went on to heal completely.

In this case, plaintiff wore the walking cast for 4 weeks, from November 1, 2004, to November 30, 2004. On October 14, 2004, defendant Haile gave plaintiff the temporary posterial splint. The court assumes that when defendant Kofoed states that plaintiff's cast treatment lasted for 6 weeks, he includes the two weeks he wore the splint.

Defendants' evidence demonstrates that plaintiff's 6 week cast/splint treatment was standard. They have also presented evidence that it was not uncommon for plaintiff to have a persistent fracture line after the cast removal. In contrast, plaintiff has presented no expert evidence supporting his claim that removal of the cast was not medically warranted because the fracture was not completely healed. Plaintiff has presented no expert injury demonstrating that he suffered any injury because the cast was moved before the fracture was completely healed. Accordingly, the court finds that defendant Kofoed is entitled to summary judgment as to this claim.

In the amended complaint, plaintiff alleges that defendant Kofoed saw him on January 31, 2005, which was two months after the cast was moved. Plaintiff alleges that the

1  failure to conduct the follow-up examination sooner violated the Eighth Amendment.

2  As discussed above, on November 30, 2004, defendant Kofoed ordered a follow-
3  up in 4 weeks.  He saw plaintiff 8 weeks later on January 31, 2005.  In his opposition, plaintiff
4  states that on December 20, 2004, he was seen by Dr. Saukhla for pain in his left foot.  Plaintiff
5  suggests that the records from this examination demonstrate deliberate indifference by defendant
6  Kofoed in not conducting a more timely follow-up examination after the cast removal.

7  Attached to his declaration filed in support of his opposition as exhibit G is the
8  entry in plaintiff's medical records by Dr. Saukhla.  According to plaintiff, Dr. Saukhla told him
9  that the fracture had not completely healed.  Plaintiff claims that defendant Kofoed had not
10  previously informed him of this.  Dr. Saukhla's entry states that plaintiff was to have a follow-up
11  with the Ortho Clinic at the end of the month.  Dr. Saukhla ordered that plaintiff should continue
12  on his current medications.  He wrote that while plaintiff "needs to use crutches to ambulate,"
13  plaintiff came in using only one crutch.  He also wrote that plaintiff should use an ace wrap as
14  before.

15  The entry by Dr. Saukhla does not demonstrate deliberate indifference by
16  defendant Kofoed either before or after December 20, 2004.  Dr. Saukhla prescribed no new
17  medication.  He also observed that plaintiff was not using his crutches properly.  In any event,
18  plaintiff offers no expert evidence demonstrating how the one month delay in the follow-up
19  caused him to suffer any harm.  The court also finds that any failure by defendant Kofoed to
20  earlier inform plaintiff that the fracture had not completely healed did not constitute deliberate
21  indifference.  According to defendant Kofoed, this was not uncommon.  This information was
22  not crucial to any medical decision made by plaintiff.  Accordingly, defendant Kofoed is entitled
23  to summary judgment as to this claim.

24  Plaintiff also claims that defendant Kofoed did not order timely physical therapy.
25  Defendant Kofoed ordered the physical therapy on January 31, 2005.  Plaintiff offers no expert
26  evidence demonstrating that defendant should have offered the therapy at a sooner time.  If

plaintiff is complaining about a delay in the start of physical therapy after January 31, 2005, he offers no evidence to support such a claim.  Accordingly, the court recommends that defendant be granted summary judgment as to this claim.

D. <u>State Law Claims</u>

Defendants have also moved for summary judgment as to plaintiff's state law claims.  Because the court recommends that defendants be granted summary judgment as to the federal claims, it declines to exercise jurisdiction over the pendant state law claims.  28 U.S.C. § 1367(c).  For that reason, the court will not address defendants' motion insofar as it moves for summary judgment on the merits of the state law claims.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' November 9, 2007, summary judgment motion be granted as to plaintiff's constitutional claims; plaintiff's remaining state law claims be dismissed pursuant to 28 U.S.C. § 1367(c).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:   04/29/08

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

st2275.sj